NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILKEN DE LOS SANTOS,** *o/b/o A.D., a minor* <br><br> **Plaintiff,** <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> **Defendant.** | Civil Action No. 14-6586 (ES) <br><br> **OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Plaintiff Wilken De Los Santos on behalf of a minor, A.D., seeking review of an Administrative Law Judge's ("ALJ") decision denying A.D.'s application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the ALJ's decision is affirmed.

**I.     Background**

On October 8, 2009, Plaintiff applied for SSI benefits on behalf of her seven-year-old daughter, A.D., alleging disability since November 25, 2006 due to attention deficit hyperactivity disorder ("ADHD").  (D.E. No. 5, Administrative Record ("Tr.") at 261-64, 295).  The Commissioner denied A.D.'s SSI application on April 21, 2010, and again on reconsideration on November 17, 2010.  (Tr. at 79-81; 85-88).

Plaintiff requested a hearing before an ALJ, which was held on February 8, 2012 before ALJ Marissa Pizzuto. (Tr. at 52-68, 89). On April 16, 2013, ALJ Pizzuto held a supplementary hearing to afford Plaintiff's counsel the opportunity to cross-examine a medical expert who had responded to interrogatories after the date of the initial hearing. (Tr. at 34-50). On May 3, 2013, ALJ Pizzuto issued an unfavorable decision for A.D., finding that she was not disabled. (Tr. at 27).

On July 1, 2013, Plaintiff requested a review of ALJ Pizzuto's decision. (Tr. at 8). The Appeals Council of the Social Security Administration denied the appeal on August 19, 2014. (Tr. at 1-7). Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("Defendant" or "the Commissioner"). *See* 20 C.F.R. § 404.981.

On October 23, 2014, Plaintiff appealed the Commissioner's decision by filing the Complaint with this Court. (D.E. No. 1, Complaint ("Compl.")). The administrative record was filed on December 11, 2014, (D.E. No. 5), and the parties briefed the issues raised by Plaintiff's appeal, (D.E. No. 8, Brief in Support of Plaintiff Wilken De Los Santos o/b/o A.D. ("Pl. Mov. Br."); (D.E. No. 9, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")). The matter is now ripe for resolution.

## II.     Legal Standards

### A.     Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

**B.  The Three-Step Process for Evaluating Whether a Child Is Disabled**

Under the Social Security Act ("SSA"), the Social Security Administration is authorized to pay supplemental security income to "disabled" persons.  42 U.S.C. § 1382(a).  A child, i.e., "[a]n individual under the age of 18," is "disabled" if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  Regulations promulgated under the SSA set forth a three-step sequential process for determining whether a child is disabled.  20 C.F.R. § 416.924.  The claimant bears the ultimate burden of establishing these three steps.  *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

At step one, the ALJ assesses whether the child is currently engaging in substantial gainful activity.  20 C.F.R. § 416.924(b).  If the child is engaging in substantial gainful activity, then the

child is not disabled, and the ALJ's inquiry ends. *Id.* If the ALJ finds that the child is not engaging in substantial gainful activity, the ALJ proceeds to step two and determines whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). Absent such an impairment or combination of impairments, the child is not disabled. *Id.* Conversely, if the child has a severe impairment or combination of impairments, the ALJ proceeds to step three. 20 C.F.R. § 416.924(a). At step three, the ALJ determines whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment ("listing") found in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 416.924(d). If the child has an impairment that meets, medically equals, or functionally equals a listing, the child is deemed disabled under the SSA. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments "medically equals" a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). To determine whether an impairment medically equals a listing, the ALJ considers all of the evidence in a claimant's record about the claimant's impairment(s) and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the child's impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A child has an impairment or combination of impairments that "functionally equals" a listing if he or she has either two "marked" limitations or one "extreme" limitation in the following domains: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, or (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A limitation is "marked" if it "interferes seriously with [the child's]

4

ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). Such a limitation is "'more than moderate' but 'less than extreme.'" *Id.* A limitation is "extreme" if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). While an extreme limitation is "more than marked," it is not necessarily the equivalent of "a total lack or loss of ability to function." *Id.* In determining whether an impairment or combination of impairments "functionally equals" a listing, the ALJ considers "all the relevant factors," including the effectiveness of the child's medication, the child's ability to function in school, and the effects of structured settings on the child's performance. 20 C.F.R. § 416.926a(a)(1)-(3).

## III.   ALJ Pizzuto's Decision

The ALJ applied the three-step disability evaluation process and determined that A.D. was not disabled under the Social Security Act. (Tr. at 18-27). At step one, the ALJ determined that A.D. had not engaged in substantial gainful activity, noting that A.D. was a "school-age child on October 8, 2009, the date the disability application was filed, and is currently a school-age child." (*Id.* at 18). At step two, the ALJ determined that A.D. suffered from two severe impairments, ADHD and asthma. (*Id.*).

At step three, the ALJ found that A.D. "does not have an impairment or combination of impairments that meets or medically equals the severity" of the listings in Appendix 1. (*Id.*). Specifically, the ALJ mentioned listings 112.02 (organic mental disorders) and 112.11 (ADHD) and found that the requirements of neither listing were met or equaled. (*Id.*). In finding that A.D. did not meet the requirements of either listing, the ALJ noted that A.D. exhibited "less than marked limitation in acquiring and using information," (*id.* at 21); "marked limitation in attending and completing tasks," (*id.* at 23); "less than marked limitation in interacting and relating with others,"

5

(*id.* at 24); "no limitation in moving about and manipulating objects," (*id.* at 25); "no limitation in the ability to care for herself," (*id.* at 26); and "less than marked limitation in health and physical well-being," (*id*).

Based on an analysis of the entire record, the ALJ found that "the record depicts a functional child who engages in a variety of daily activities and interaction, although experiencing some intermittent symptoms." (*Id.* at 27). Therefore, the ALJ concluded that A.D. was not disabled under the Social Security Act. (*Id.*).

## IV. Discussion

On appeal, Plaintiff argues that ALJ Pizzuto's opinion is not supported by substantial evidence for three reasons. First, Plaintiff argues that the ALJ erred in finding that A.D.'s impairments did not functionally equal the criteria of the listings at step three. (Pl. Mov. Br. at 22-27). Specifically, Plaintiff asserts that ALJ Pizzuto erred in finding less than "marked" limitations in the listing domains of "acquiring and using information" and "caring for yourself." (*Id.*). Second, Plaintiff argues that ALJ Pizzuto failed to properly consider all of A.D.'s impairments in combination at step three. (*Id.* at 12-22). To that effect, Plaintiff argues that a proper combination analysis would have led the ALJ to find that the requirements of listing 112.05D had been met. (*Id.* at 20). And finally, Plaintiff argues that ALJ Pizzuto erred at step two in finding that A.D.'s IQ score of 72 did not constitute a severe mental impairment. (*Id.* at 14-15). The Court will consider each of Plaintiff's arguments in turn.

### A. Whether A.D.'s Impairments Functionally Equal a Listing

Plaintiff argues that the ALJ erred at step three in failing to find that A.D. had "marked" limitations in two of the six functional domains: "acquiring and using information" and "caring for yourself." (Tr. at 11-12, 21-26). As noted above, in order for a claimant's impairment to

6

functionally equal a listing, Plaintiff must show marked restrictions in two of the six functional domains of the relevant listings. 20 C.F.R. § 416.926a. Because the ALJ already found that A.D. exhibited "marked" limitations in one other domain—attending and completing tasks—Plaintiff must only demonstrate marked restrictions in one of the two above-mentioned domains in order to prevail. (*Id.*). For the reasons stated below, however, the Court finds that Plaintiff's argument fails with respect to both domains.

### 1. "Acquiring and Using Information"

Plaintiff argues that the ALJ erred in finding that A.D. had a "less than marked" limitation in the domain of "acquiring and using information" because A.D.'s borderline IQ score of 72[1] dictated the finding of a "marked" limitation in that domain. (Pl. Mov. Br. at 11-12).

The regulations that govern the domain of acquiring and using information focus on the school-age child's academic abilities, including the ability "to learn to read, write, do arithmetic, and understand and use new information." 20 C.F.R. § 416.926a(g). In determining whether the domain's criteria are met, an ALJ may "not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4)(i). However, while individual test scores may be probative of a disability, an ALJ will consider those scores in combination with a claimant's day-to-day activities to determine if the claimant "function[s] in school, home, and the community far below [her] expected level of functioning based on this score." 20 C.F.R. § 416.926a(e)(4)(ii)(A). Indeed, courts have found that a borderline IQ score does not necessitate a finding of marked

---

[1] Borderline intellectual functioning is defined as having an IQ score between 71 and 84. *See Watts ex rel. D.W. v. Astrue*, No. 12-4116, 2013 WL 2392909, at *5 (E.D. Pa. June 3, 2013).

limitation in the domain of acquiring and using information where the claimant does not exhibit severe limitations in academic performance. *See Cortes ex rel. J.C. v. Comm'r of Soc. Sec.*, No. 11-5819, 2013 WL 795599, at *4-5 (D.N.J. Mar. 4, 2013).

Here, the ALJ considered A.D.'s borderline IQ score, but contrasted the score with evidence of A.D.'s positive academic performance. (Tr. at 21-22). For example, the ALJ noted that Dr. Arrington evaluated A.D.'s mental functioning and concluded that A.D. had a "full scale IQ score of 72, which placed her in the borderline range of intellectual functioning." (*Id.* at 22). However, the ALJ also noted Dr. Arrington's finding that "these scores were an underestimation of her true ability because of her attentional fluctuations." (*Id.*). Further, the ALJ cited a "Teacher Questionnaire" filled out by A.D.'s second grade teacher, who concluded that A.D. did not have any problems in this area. (*Id.* at 22, 305-06). And finally, the ALJ noted that "while the record shows that claimant has some limitation in this area, she excels academically and is on grade level in reading, math, and written language." (*Id.* at 22). Thus, the ALJ's consideration of A.D.'s IQ score with respect to the domain of acquiring and using information is supported by substantial evidence. *See Cortes ex rel. J.C.*, 2013 WL 795599, at *4-5 (holding that ALJ's "less than marked" finding for the domain of acquiring and using information was supported by substantial evidence where claimant had a borderline I.Q. score, but exhibited improvement in school).

### 2. "Caring for Yourself"

Plaintiff claims that the ALJ erred in her analysis of the domain of "caring for yourself" in two respects: (1) the ALJ improperly discredited testimony from A.D.'s mother which suggested that A.D. was limited in this domain, and (2) the ALJ selectively considered favorable portions of medical reports while improperly disregarding other portions that contradicted the ALJ's conclusion. (Pl. Mov. Br. at 24-27).

8

In the domain of "caring for yourself," an ALJ will consider how well a child "maintain[s] a healthy emotional and physical state." 20 C.F.R. § 416.926a(k). Caring for yourself effectively involves an "ability to respond to changes in your emotions and the daily demands of your environment to help yourself and cooperate with others in taking care of your personal needs, health and safety." 20 C.F.R. 416.926a(k)(1)(ii). A school-age child between the ages of six and twelve "should be independent in most day-to-day activities," but difficulty with some activities and necessary reminders are expected. 20 C.F.R. § 416.926a(k)(2)(iv); *see also Cruz v. Comm'r of Soc. Sec.,* No. 08-5836, 2010 WL 1529437, at *4 (D.N.J. Apr. 16, 2010). Thus, the regulations acknowledge that even children ages six to twelve who can effectively care for themselves will sometimes require reminders and the cooperation of others, and will also face some difficulties. *See, e.g., Cruz*, 2010 WL 1529437, at *4 (D.N.J. Apr. 16, 2010).

Plaintiff takes issue with the ALJ's treatment of A.D.'s mother's testimony that she "has to monitor the child to dress, bathe and groom because [A.D.] becomes distracted," and "does not do what she is told most of the time." (Tr. at 26). Plaintiff argues that the mother's testimony supports a finding of marked limitation in the domain of "caring for yourself." (Pl. Mov. Br. at 24-25). As a result, Plaintiff argues, the ALJ implicitly discredited her testimony by arriving at a finding of no limitation in this domain. (*Id.*).

The Court disagrees. It is not apparent from the ALJ's opinion that the mother's testimony was discredited at all—the fact that A.D. needs monitoring to perform daily tasks like dressing and bathing may be consistent with the normal functioning of a child of A.D.'s age. *See* C.F.R. § 416.926a(k)(2)(iv) (noting that caring for yourself effectively means, in part, that "you should begin to recognize that you are competent in doing some activities and that you have difficulty with others"). Indeed, the ALJ supports a finding of A.D.'s normal functioning in this domain by

9

reference to the fact that "school records show the claimant has no problem" in the domain of caring for yourself. (Tr. at 26, 310). For these reasons, the Court affirms the ALJ's consideration of the mother's testimony.

Next, Plaintiff takes issue with the ALJ's treatment of two reports—one by consulting psychiatrist Dr. Anthony Candela, and another by consulting psychiatrist Dr. Kim Arrington. Plaintiff argues that the ALJ selectively considered the portion of Dr. Candela's report where the doctor "indicated the claimant was able to dress and feed herself and that she does chores occasionally," while leaving out other portions which were not favorable to the ALJ's finding of no limitation in this domain. (Pl. Mov. Br. at 24). The relevant portion of Dr. Candela's report reads as follows:

> [A.D.] is able to dress and feed herself. She is toilet trained. Her sleep and eating are adequate, but she has frequent night terrors according to her mother. She is usually in bed around 11:00 to 12:00 at night and is up at 6:00 am. Her play is rough. She has difficulties in school. She is better with medication in school, however. She does chores occasionally.

(Tr. at 348). Plaintiff also argues that the ALJ failed to consider the portion of Dr. Arrington's report in which the doctor concluded that A.D. "needs support to perform simple age related tasks, [and] she will have difficulty learning in accordance with her cognitive functioning." (Pl. Mov. Br. at 25; Tr. at 387).

However, a review of these reports does not indicate that the ALJ improperly disregarded any portion which would have contradicted the ALJ's conclusion at this phase of the analysis. As noted above, Social Security regulations permit a finding of "no limitation" in the domain of caring for yourself even in the presence of difficulties such as those noted in the two psychiatrists' reports. *See Cruz*, 2010 WL 1529437, at *4. The ALJ noted those difficulties throughout her opinion as required, (*see, e.g.*, Tr. at 20, 22, 23), and ultimately found those difficulties to be within acceptable

10

limits for a child in A.D.'s age group, (*id.* at 26). Thus, the ALJ appears to have fully considered both medical reports and arrived at a conclusion consistent with those reports. *See Cruz,* No. 08-5836, 2010 WL 1529437, at *5 (affirming ALJ's conclusion that claimant did not meet or equal the requirements of the domain of "caring for yourself," where school evaluations noted the presence of problems in this domain but also noted that the problems were improving).

### B. Listing 112.05D and the Combination Analysis

Next, Plaintiff argues that the ALJ erred by failing to explicitly consider A.D.'s impairments under the rubric of listing 112.05D, which relates to intellectual disabilities. (Pl. Mov. Br. at 18). Plaintiff asserts that if the ALJ had properly considered A.D.'s borderline IQ in combination with her severe asthma and ADHD, the ALJ would necessarily have found this combination of impairments to medically "equal" the requirements of listing 112.05D. (*Id.* at 18-22).

To meet the requirements of listing 112.05D, the plaintiff must show a valid verbal IQ score, performance IQ score, or full scale IQ score of 60 through 70, and a physical or other mental impairment imposing an additional and significant limitation of function. 20 C.F.R. § Part 404, Subpart P, App. 1. "An ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec.*, No. 13-781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008)). In conducting this combination analysis, the ALJ is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B). Notably, however, the ALJ is not required "to use particular language or adhere to a particular

11

format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Thus, an ALJ may fulfill his obligation to consider a claimant's impairments in combination even where the ALJ does not explicitly mention an applicable listing—so long as the decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing." *Id.*; *see also Holloman v. Comm'r of Soc. Sec.*, No. 14-589, 2015 WL 1346167, at *2 (D.N.J. Mar. 25, 2015).

Here, the ALJ states at the outset that she considered all of A.D.'s impairments in combination with one another, and supports this statement with a detailed analysis of the evidence relevant to each impairment. (Tr. at 19). In beginning her step three analysis, the ALJ states:

> the undersigned has evaluated the "whole child" in making findings regarding functional equivalence. The undersigned has first evaluated how the child functions in all settings and at all times . . . . The undersigned has also assessed the interactive and cumulative effects of all the claimant's medically determinable impairment(s), including any impairments that are not "severe" in all of the affected domains.

(*Id.*). In support, the ALJ notes that Dr. Robert Berk, a medical expert who reviewed A.D.'s entire medical record, concluded that the record established the presence of ADHD and asthma. (*Id.* at 20). Dr. Berk opined that A.D.'s impairments posed only minimal limitations, based in part on the fact that A.D. was doing well in school, and responded positively to medication. (*Id.*)

The ALJ also notes that A.D.'s pediatrician, Dr. Susan Dellert, diagnosed A.D. with ADHD, but also observed that "A.D. was doing well academically." (*Id.* at 22). The ALJ later notes that Dr. Arrington evaluated A.D. and found that she had a 72 IQ, which placed her in the borderline range of intellectual functioning. (*Id.*). Significantly, Dr. Arrington also opined that the result of A.D.'s IQ test was an "underestimation of her true ability because of her attentional fluctuations." (*Id.*). Regarding A.D.'s asthma, the ALJ notes that while A.D. has a history of asthma, her breathing impairment "is controlled with medication and she has not had any

emergency room visits or hospitalizations." (*Id.* at 26). And in concluding her step three analysis, the ALJ states that A.D.'s "activities of daily living are not significantly limited by any medically determinable impairment . . . . Accordingly, the claimant does not have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." (*Id.* at 26-27).

Based on this discussion, the Court finds that the ALJ met her requirement to consider A.D.'s mental impairments both individually and combined with A.D.'s other medically determinable impairments. *See Gainey v. Astrue*, No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) (finding that "the ALJ's detailed analysis of the individual impairments and conclusion that [p]laintiff did not have 'an impairment or combination of impairments' that met or equaled a listing is sufficient" to meet the ALJ's step three requirements).

Regarding Plaintiff's argument that these impairments in combination meet the requirements of Listing 112.05D, (Pl. Mov. Br. at 19), the Court disagrees. Initially, the Court notes that A.D.'s IQ is not within the 60-70 range required by the Listing. Thus, it appears that the medical evidence does not implicate Listing 112.05D, and does not require its analysis by the ALJ. *See Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005) (noting "the claimant had the burden of presenting sufficient evidence that her medical problems were of listing severity" at step three).

Furthermore, Plaintiff cites to no evidence in the record that would support her argument that A.D.'s severe ADHD or asthma could combine with her 72 IQ to effectively lower her IQ into the 60-70 range. In fact, as noted above, Dr. Arrington's report suggests that A.D.'s IQ score of 72 already takes into account the effects of her ADHD. (Tr. at 22) (noting Dr. Arrington's opinion that the result of A.D.'s IQ test was an "underestimation of her true ability because of her

13

attentional fluctuations"). Accepting Dr. Arrington's findings as valid, as the ALJ did, conducting an additional analysis to combine the effects of A.D.'s ADHD with her other cognitive impairments would thus "double-count" the impact of her ADHD on her overall mental functioning. Such an analysis would defy logic and clearly could not be used to support a finding that Listing 112.05D had been met or equaled.

Accordingly, the Court finds that the ALJ did not err by failing to explicitly consider Listing 112.05D or by failing to find that its requirements had been met. *See Williams*, 156 F. App'x at 505 (affirming ALJ at step three despite lack of discussion regarding specific Listings because Plaintiff nevertheless failed to meet his burden that impairments were of Listing severity).

### C. A.D.'s Mental Impairments at Step Two

Plaintiff argues that the ALJ erred at step two by failing to find that A.D.'s IQ score of 72 constituted a severe mental impairment. (Pl. Mov. Br. at 11, 14-15). To demonstrate a "severe" impairment, an applicant has the burden to show something more than a slight abnormality or a combination of slight abnormalities which cause "more than minimal functional limitations." 20 C.F.R. § 416.924(c); *see also Cacere v. Comm'r of Soc. Sec.*, 189 F. App'x 59, 63 (3d Cir. 2006). It is well settled that a disability "is not determined merely by the presence of a diagnosed impairment, but by the effect that the impairment has upon the individual's ability to perform substantial gainful activity." *Van Mook v. Astrue*, No. 10-876, 2011 WL 3875527, at *2 (W.D. Pa. Aug. 31, 2011) (citing *Jones v. Sullivan,* 954 F.2d 125, 129 (3d Cir.1991)).

Here, the portion of the administrative decision containing the ALJ's step two conclusions is devoid of analysis, and contains no explicit discussion of the severity of Plaintiff's intellectual impairment. Nevertheless, if the administrative decision is read as a whole, it is clear that the ALJ in fact considered the severity of this impairment, and included the relevant discussion throughout

14

the remainder of the administrative decision. *See Jones*, 364 F.3d at 505 (holding that an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis").

For example, as the Court discussed in Section IV.A.1., *supra*, the ALJ noted that A.D. had a "full scale IQ score of 72, which placed her in the borderline range of intellectual functioning." (Tr. at 22). Regarding the functional limitations of Plaintiff's "borderline" intellectual capacity, the ALJ noted that

> [t]he reports of the claimant's mental health treatment do not reveal an extreme severity of the symptoms. She has generally maintained a GAF[2] in the 50's to 60's throughout treatment which, in the Children's Global Assessment Scale, indicates that there is variable functioning with sporadic difficulties. The treatment notes show mostly good response from medications. The reports from the claimant's school teacher do not indicate any problems or difficulty relative to any domain and she was noted to be on an above average level in reading and math.

(*Id.* at 20). The ALJ also cited the expert testimony of Dr. Berk, who, as discussed above, concluded that A.D.'s impairments do not impose "more than a minimal limitation on [A.D.'s] ability to function." (Tr. at 20). Thus, the ALJ clearly considered the existence of Plaintiff's borderline IQ, and concluded that it did not cause a severe functional limitation as required for a finding of severity at step two. Accordingly, the Court finds that discussion adequately supports the ALJ's decision not to list A.D.'s borderline-level intelligence as a severe mental impairment. *See Cortes ex rel. J.C.*, 2013 WL 795599, at *4-5 (affirming ALJ's step two conclusion that claimant's borderline IQ was not a severe impairment despite the presence of troubles in school, low GAF scores, and the mother's concerns with claimant's intelligence level).

---

[2] A GAF, or "global assessment of functioning" score, is a medical source's personal assessment of the plaintiff's global mental functioning at the time of evaluation. *See, e.g.*, *Ripka v. Colvin*, No. 12-2047, 2014 WL 1156292, at *9 n.12 (M.D. Pa. Mar. 21, 2014).

**V.     Conclusion**

For the foregoing reasons, the Court AFFIRMS ALJ Pizzuto's decision.  An appropriate Order accompanies this Opinion.


                                                            *s/Esther Salas*
                                                            **Esther Salas, U.S.D.J.**